UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:10-CR-124 |
| | ) | 3:11-CR-11 |
| | ) | JUDGE JORDAN |
| LESLIE JANOUS | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Leslie Janous, and the defendant's attorney, W. Thomas Dillard, have agreed upon the following:

1. The defendant will plead guilty to Counts Eight and Nine of the Indictment (3:10-CR-124), charging the defendant with wire fraud in violation of 18 U.S.C. § 1343.

The punishment for this offense is as follows: Imprisonment of up to 20 years, a fine of not more than $250,000, supervised release for a period of not more than five years, criminal forfeiture, restitution, and a special assessment of $100.

2. The defendant will waive indictment and arraignment and plead guilty to a one-count Information (3:11-CR-11) charging the defendant with money laundering in violation of 18 U.S.C. § 1957.

The punishment for this offense is as follows: Imprisonment of up to 10 years, a fine of not more than $500,000 or twice the value of the laundered funds,

whichever is greater, supervised release of up to three years, criminal forfeiture, restitution, and a special assessment of $100.

3. In consideration of the defendant's guilty pleas, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts of the Indictment against the defendant in case number 3:10-CR-00124. The United States also agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant related to the charges in this Indictment and Information.

4. The defendant has read the Indictment and Information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crimes must be proved beyond a reasonable doubt:

 a) <u>Wire Fraud in violation of 18 U.S.C. § 1343</u>

  (1) That the defendant devised a scheme to defraud or to obtain money by materially false or fraudulent pretenses, representations or promises;

  (2) that the defendant acted with intent to defraud; and

  (3) that in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire,

radio, or television communication in interstate commerce or cause the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

b) <u>Money Laundering in violation of 18 U.S.C. § 1957</u>

    (1) The defendant engaged or attempted to engage;

    (2) In a monetary transaction;

    (3) Involving criminally derived property;

    (4) Where the value of the criminally derived property exceeds $10,000;

    (5) The property is derived from specified unlawful activity; and

    (6) The defendant knows that the property is criminally derived.

5. In support of the defendant's guilty pleas, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty pleas. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

# FACTUAL BASIS FOR PLEAS

## Counts Eight and Nine (3:10-CR-124)

From 2004 through 2010, the defendant, Leslie Janous ("Janous"), was employed as a bookkeeper by Scancarbon, in Knoxville, Tennessee. Through that position, Janous was entrusted with access to Scancarbon's financial information and bank accounts. She was not, however, authorized to transfer the funds owned by Scancarbon other than for legitimate business purposes. Janous used her position at trust in order to embezzle funds owned by Scancarbon. She did so by making unauthorized wire transfers, through providing herself with unauthorized bank drafts, and through the unauthorized use of company credit cards. In this manner, Janous converted not less than $4 million from Scancarbon for her own use.

In 2005, Janous set up Lesleigh Enterprises, LLC ("Lesleigh"), a Tennessee limited liability company. Janous then opened a bank account at Regions Bank in the name of Lesleigh. Thereafter, Janous began making unauthorized wire transfers of funds in the Regions Bank account owned by Scancarbon into the account owned by Lesleigh. After transferring Scancarbon's funds to the Lesleigh account, Janous then transferred the money to other bank accounts that she owned jointly with her domestic partner, Leigh Janous. Afterward, Janous created phony Regions Bank statements in order to prevent her embezzlement of funds from being detected.

In order to perpetuate her fraudulent scheme, Janous made a number of wire transfers, including, without limitation, the following: On April 1, 2010, Janous made an unauthorized wire transfer of $458,886.61 from a Regions Bank account held by Scancarbon, with the account number XXXXXX8901, to a Regions Bank account held by Lesleigh, with the account number XXXXXX6581. On April 6, 2010, Janous made an unauthorized wire transfer of $189,667.96 from Scancarbon's Regions Bank account number XXXXXX8901 to Lesleigh's Regions Bank account number XXXXXX6581.

Count One (3:11-CR-11)

On April 7, 2010, Janous made a wire transfer of $647,698.64 – consisting entirely of the funds that Janous had stolen from Scancarbon in the unauthorized wire transfers that occurred on April 1, 2010 and April 6, 2010 – from Regions Bank account owned by Lesleigh, account number XXXXXX6581, to Pinnacle National Bank account number XXXXX4838, a bank account owned by Title Associates of Knoxville.

On April 10, 2010, Janous and her domestic partner, Leigh Janous, purchased the real property located at 1308 Selby Lane, Knoxville, Tennessee, 37922, and paid a portion of the purchase price with the $647,698.64 that had been stolen from Scancarbon and transferred into the Pinnacle National Bank account owned by Title Associates of Knoxville. In making this purchase, Janous engaged in a monetary

transaction involving a financial institution with proceeds of specified unlawful activity – that is, wire fraud – with money that Janous knew was criminally derived.

6. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    a) the right to be indicted by a grand jury for these crimes;

    b) the right to plead not guilty;

    c) the right to a speedy and public trial by jury;

    d) the right to assistance of counsel at trial;

    e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    f) the right to confront and cross-examine witnesses against the defendant;

    g) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

    h) the right not to testify and to have that choice not used against the defendant.

7. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful terms of imprisonment, any lawful fines, and any lawful terms of supervised release up to the statutory maximums;

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty pleas. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

8. The defendant further agrees to cooperate fully, completely, and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being

interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody, or control that are relevant to the United States' inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

9. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall restrict the use of any information (1) known to the United States prior to entering into this written plea agreement, (2) obtained from any other source, or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or misleading information during the course of the defendant's cooperation, (2) the defendant moves to withdraw the

defendant's guilty plea, or (3) the defendant breaches any other of the terms of this plea agreement, then the United States may make use of any information provided by the defendant to law enforcement authorities at any time (including any information provided during formal or informal proffer sessions prior to signing this plea agreement, and any information provided after signing this plea agreement) for any purpose in any subsequent proceeding, including grand jury, trial, and sentencing phases of this case or in any other prosecutions or proceedings against the defendant or others. Moreover, if the United States determines at any time (before or after sentencing) that the defendant has failed to cooperate fully, completely, and truthfully, or otherwise violated any of the terms of this plea agreement, it will be free to withdraw any favorable sentencing motion filed by the United States, including motions filed under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553.

10. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

11. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to

Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

12. The defendant agrees to pay the special assessment in this case prior to sentencing.

13. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, real or personal, which are in the possession or control of the defendant or the defendant's nominees, which constitute or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1343 and/or 1957. The defendant agrees to forfeiture of the defendant's interest in any items of real and personal property including, but not limited to, any interest in the identified on Attachment A hereto. The defendant further agrees to assist the United States fully in

the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described on Attachment A and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing. For purposes of this plea agreement, the defendant and the United States agree that the defendant's interest in the sum of $204,456.07 invested in a 401(k) plan with The Hartford does not constitute proceeds traceable to a violation of 18 U.S.C. §§ 1343 and/or 1957; provided, however, that the ability of the United States to forfeit substitute assets in accordance with 21 U.S.C. § 853(p) is not affected by this agreement.

14. The defendant agrees that the court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal

activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offenses. The defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay restitution in an amount to be determined jointly by the defendant and the United States, or if the defendant and the United States are unable to reach agreement, in an amount to be determined by the Court at the time of sentencing.

15. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully

all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

16. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant agrees not to file a direct appeal of the defendant's convictions or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable

mandatory minimum sentence (whichever is greater) determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's convictions and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

17. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty pleas as agreed herein, moving to withdraw guilty pleas after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional

or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty pleas in this case.

18. This plea agreement, including Attachment A hereto, constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

2/22/2011
Date

By: _____
Frank M. Dale, Jr.
Assistant United States Attorney

2.22.11
Date

_____
Leslie Janous
Defendant

2-22-11
Date

Tom Dillard *with permission by phone Panis*
W. Thomas Dillard
Attorney for the Defendant